# In the United States Court of Federal Claims

No. 19-1864C
(Filed February 10, 2022)
NOT FOR PUBLICATION

```
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
                                            *
ISTVAN RUZSA,                               *
                                            *
                        Plaintiff,          *
                                            *
            v.                              *
                                            *
THE UNITED STATES,                          *
                                            *
                        Defendant.          *
                                            *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

## MEMORANDUM OPINION AND ORDER

WOLSKI, Senior Judge.

In this matter plaintiff Istvan Ruzsa, representing himself, requests damages of $2,000,000 from the federal government. While Mr. Ruzsa's papers are difficult to understand, it appears he is complaining about past reductions in his social security benefits. The government has moved to dismiss the case for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). For the reasons below, the motion to dismiss this case is **GRANTED**.

## I. BACKGROUND

The complaint filed by Mr. Rusza on December 9, 2019, is rather cryptic, and was accompanied by an exhibit consisting of 176 pages of medical and financial records and documents regarding other proceedings. *See* Compl., ECF No. 1 at 1–5; Ex. 1 to Compl., ECF No. 1-1, at 1–176. To the extent his allegations can be discerned, these are, of course, taken as true for purposes of the motion to dismiss this case. *See Airport Rd. Assocs., Ltd. v. United States*, 866 F.3d 1346, 1351 (Fed. Cir. 2017). Plaintiff recounts that he is an immigrant from Hungary who suffered numerous and severe injuries while working in Connecticut for a company he calls

"Printery Co." *See* Compl. at 1;[1] Ex. 1 to Compl. at 132, 134; *see also* Am. to Compl., ECF No. 10, at 1.[2] Other than listing his various injuries, the body of the complaint merely identifies the size of his medical bills, notes that his monthly social security benefits are less than his rent, and requests help to meet his living expenses. Compl. at 1–2. From the documents in the exhibit, and a paper that was filed as an amendment to his complaint, it appears his claim concerns social security benefits. *See* Ex. 1 to Compl. at 131–36, 138–46; Am. to Compl. at 1.

As a result of workplace injuries, plaintiff alleges he became disabled, after which his employer and insurance company "never paid [him]." Ex. 1 to Compl. at 132. In 2000, Mr. Ruzsa apparently became entitled to social security disability insurance benefits for a period spanning at least sixteen and one-half months, *see id.* at 92, but plaintiff suggests he should have been paid an additional $2,800 per month for mental disability and $2,700 per month for a stroke disability. Am. to Compl. at 1. At some point, Mr. Ruzsa resumed working part-time, *see* Ex. 1 to Compl. at 133, and in April 2009 the Social Security Administration (SSA) determined that he ceased being entitled to disability payments as of July 2007, apparently because of the amount of his earnings from employment, *see id.* at 139. On pages of excerpts from a summary of Mr. Ruzsa's social security benefits and payments, seemingly prepared for him by the SSA in November 2017, plaintiff highlights and challenges entries reflecting actions in 2002, 2006, and 2008–11. *Id.* at 140–46. It seems the SSA determined that plaintiff received overpayments totaling $2,285.10, *id.* at 140, and provided him the name of an SSA employee in its Orlando, Florida office to which he can direct his inquiry, *id.* at 136. Presumably to recover the alleged overpayments, his monthly social security retirement benefits have been reduced by $10. Ex. 1 to Compl. at 91, 138.

Plaintiff alleges that his retirement benefits were "illegally reduc[ed]," and that the SSA "misrepresented" the state of his account. Ex. 1 to Compl. at 131. He accuses the Orlando SSA employee of criminal "fraud" and corruption, *id.* at 134, 136. Plaintiff maintains that the SSA improperly charged him $210.50 per month, including a Medicare policy premium, apparently in 2011. *See* Am. to Compl. at 1; Ex. 1 to Compl. at 142. In addition to "theft" of his disability money, he accuses the SSA of the Florida state crimes of abuse and neglect of an elderly mentally-disabled person, and aggravated abuse. *See* Am. to Compl. at 1–2. Finally, Mr. Ruzsa alleges that Bank of America fraudulently stole money from his account in 2017 and 2018, by imposing excessive charges. *See* Ex. 1 to Compl. at 149–168. All told, it

---

[1] Most of plaintiff's papers do not include any form of pagination. The Court utilizes the pagination provided in ECF.

[2] Among the documents in Exhibit 1 to the Complaint is a 1996 W-2 form indicating he was once employed by "Century Graphics Corp." Ex. 1 to Compl. at 137.

appears Mr. Ruzsa seeks $2,000,000 in damages, Comp. at 1, plus $3,200 in unspecified monthly payments, Am. to Compl. at 1.

The government has moved to dismiss this case under RCFC 12(b)(1), noting that our court lacks jurisdiction over claims relating to social security benefits. *See* Def.'s Mot. to Dismiss (Def.'s Mot.), ECF No. 7 at 1 (citing 42 U.S.C. § 405(g); *Marcus v. United States*, 909 F.2d 1470, 1471 (Fed. Cir. 1990)). In his response to the motion, Mr. Ruzsa merely states that the motion is "wrong," reiterates his injuries and financial condition, and contends that the SSA charged him $32,000 over three years. Resp. to Mot., ECF No. 13. Plaintiff also filed a motion to strike the government's motion, although his paper provides no legal basis for his request but does include the elaboration that the SSA overcharged him by $37,000 in 2002 and 2006–10. Pl.'s Mot. to Strike, ECF No. 15 at 1–2.[3] In reply, the government maintains that "in none of these filings does [plaintiff] respond to or otherwise overcome our demonstration that his complaint does not purport to assert a claim that is based upon an express or implied-in-fact contract with the United States, or a money mandating provision of law, as required by the Tucker Act." Def.'s Reply at 1, ECF No. 16.

## II. DISCUSSION

### A. Standard of Review

Under RCFC 12(b)(1), this court must dismiss claims that do not fall within its subject-matter jurisdiction. When considering a motion to dismiss a case for lack of subject-matter jurisdiction, courts will ordinarily accept as true all factual allegations the non-movant made and draw all reasonable inferences in the light most favorable to that party. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Airport Rd. Assocs.*, 866 F.3d at 1351 (quoting *Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002)) (stating that on a motion to dismiss a case for lack of subject-matter jurisdiction, a court must "view the alleged facts in the complaint as true, and if the facts reveal any reasonable basis upon which the non-movant may prevail, dismissal is inappropriate"); *CBY Design Builders v. United States*, 105 Fed. Cl. 303, 325 (2012).

While a *pro se* plaintiff's filings are to be liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), this lenient standard cannot spare from dismissal claims falling outside this court's jurisdiction. *See, e.g., Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995). It is incumbent on the plaintiff to properly invoke the court's jurisdiction by properly alleging a breach of contract by the federal government or identifying a money-mandating law which was allegedly violated by

---

[3] Plaintiff also submitted a document with numerous but mostly duplicative medical and financial records attached, which was filed as a status report. *See* ECF No. 12.

the government. *See United States v. Mitchell*, 463 U.S. 206, 216–17 (1983). A plaintiff's *pro se* status does not relieve him of the obligation to demonstrate jurisdiction by a preponderance of the evidence. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936) (explaining the plaintiff's responsibility for showing that the claim falls within the court's jurisdiction); *Henke*, 60 F.3d at 799 (noting that a plaintiff's status does not excuse defects in the complaint); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) (stating that the burden of proof for establishing jurisdiction is by a preponderance of the evidence).

## B. Analysis

As is often the case when individuals represent themselves in this court, Mr. Ruzsa fails to correctly understand the court's jurisdictional remit. The Court of Federal Claims has been given the power to adjudicate cases involving violations of a particular category of federal laws or constitutional provisions---namely, those that mandate the payment of money by the federal government. *See* 28 U.S.C. § 1491(a)(1); *United States v. Testan*, 424 U.S. 392, 398 (1976); *Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013) ("To be cognizable under the Tucker Act, the claim must be for money damages against the United States, and the substantive law must be money-mandating.").

Mister Ruzsa's complaint clearly fails to plead claims that fall within our jurisdiction. To the extent his complaint can be construed as raising claims against Bank of America, these are not cognizable as only claims against the United States government may be entertained in our court. *See United States v. Sherwood*, 312 U.S. 584, 588 (1941) (explaining that our predecessor court "is without jurisdiction [over] any suit brought against private parties"); *see also Ambase Corp. v. United States*, 61 Fed. Cl. 794, 796 (2004) (explaining that this court lacks jurisdiction over private parties); *Stephenson v United States*, 58 Fed. Cl. 186, 190 (2003) ("[T]he *only* proper defendant for any matter before this court is the United States, not its officers, nor any other individual.").

Moreover, Congress placed beyond our jurisdiction certain claims for money against the federal government, namely claims founded upon intentional or negligent mistreatment and criminal law violations. 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States *in cases not sounding in tort*.") (emphasis added); *Shearin v. United States*, 992 F.2d 1195, 1197 (Fed. Cir. 1993) (explaining it is "well settled that the United States Court of Federal Claims lacks . . . jurisdiction to entertain tort claims"); *Collins v. United States*, 854 F.2d 1327, 1988 WL 72163, at *1 (Fed. Cir. 1988) (holding a "claim for mistreatment sounds in tort" and is thus outside our court's jurisdiction); *Stanwyck v. United States*, 127 Fed. Cl. 308, 314–15 (2016) (explaining our lack of jurisdiction over violations of criminal law).

Consequently, allegations of fraudulent conduct by federal officials cannot be heard by our court. *See, e.g., Cottrell v. United States*, 42 Fed. Cl. 144, 149 (1998). Nor can we entertain allegations of theft by federal officials or employees. *See Sepehry-Fard v. United States*, No. 18-1118C, 2019 WL 4137497, at *5 (Fed. Cl. Aug. 30, 2019), aff'd, 2020 WL 6375161 (Fed. Cir. July 23, 2020); *Akbar v. United States*, No. 18-17C, 2018 WL 3198838, at *2 (Fed. Cl. June 29, 2018).[4]

After ruling out claims against a private party or based on tortious or criminal conduct, what remains of Mr. Ruzsa's case are allegations that the federal government failed to properly pay Mr. Ruzsa his social security benefits. While it might be understandable that a litigant representing himself, like Mr. Ruzsa, would believe such claims come within our jurisdiction, as they are brought ostensibly under a money-mandating statute, *see* 42 U.S.C. §§ 402(a), 423(a), this is not the case. Unfortunately for Mr. Ruzsa, "Congress may also specify, in a particular statute that mandates payment of money, that review is restricted to a court other than ours." *Fletcher v. United States*, No. 10-203C, 2010 WL 2640337, at *2 (Fed. Cl. June 30, 2010). Congress has done this regarding social security benefits, restricting court review to federal district courts. 42 U.S.C. § 405(g)–(h). Our Court is not a district court. *Ledford v. United States*, 297 F.3d 1378, 1382 (Fed. Cir. 2002). Accordingly, the Federal Circuit has held that our Court "has no jurisdiction . . . over claims to social security benefits." *Marcus v. United States*, 909 F.2d 1470, 1471 (Fed. Cir. 1990).[5] Transfer to a district court under 28 U.S.C. § 1631 is not warranted, as Mr. Ruzsa's voluminous filings do not contain any suggestion that he has exhausted administrative remedies by obtaining a final decision of the Commissioner of Social Security concerning his claims, a necessary predicate to court review. *See* 42 U.S.C. § 405(g); *see also Ace Prop. & Cas. Ins. Co. v. United States*, 60 Fed. Cl. 175, 187 (2004) (finding transfer not in the interest of justice

---

[4] Claimed violations of state criminal law are particularly far removed from our jurisdiction. *See, e.g., Souders v. S.C. Pub. Serv. Auth.*, 497 F.3d 1303, 1307 (Fed. Cir. 2007) (holding "[c]laims founded on state law are also outside the scope of the limited jurisdiction of the Court of Federal Claims") (citations omitted); *Sepehry-Fard*, 2020 WL 6375161, at *2 (affirming that our court "could not review an alleged violation of a state or federal criminal law") (citation omitted); *Griffin v. United States*, 96 Fed. Cl. 1, 8 (2010) (holding our "court does not have jurisdiction over alleged violations of state laws because state statutes do not create a right to money damages against the United States") (citing *Souders*, 497 F.3d at 1307).

[5] Moreover, to the extent Mr. Ruzsa seeks damages for benefit reductions made more than six years prior to the filing of his complaint, these claims would also beyond our jurisdiction due to the expiration of the statute of limitations period. *See* 28 U.S.C. § 2501; *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133–39 (2008).

when "[i]t is far from clear that the federal district court would be able to entertain the plaintiffs' claims as a result of the plaintiffs' failure to first exhaust mandatory administrative remedies"). As a consequence, the government's motion to dismiss this case for lack of subject matter jurisdiction must be **GRANTED**.[6]

### III.  CONCLUSION

For the reasons stated above, the government's motion to dismiss this case for lack of subject-matter jurisdiction, under RCFC 12(b)(1), is **GRANTED**.  The Clerk shall close the case.[7]

**IT IS SO ORDERED.**

VICTOR J. WOLSKI
Senior Judge

---

[6] As the only basis for plaintiff's motion to strike the government's motion was Mr. Ruzsa's assertion that the latter was unlawful, *see* Pl.'s Mot. to Strike at 1, the motion to strike is **DENIED.**

[7] Plaintiff's motion to refer his case for potential pro bono representation, ECF No. 9, is **DENIED** as moot.